IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| GARY M. WALLACE, | : | CASE NO. 15-10221 |
| | : | |
| Debtor. | : | JUDGE W. H. DRAKE |
| _____ | : | |

**FIRST AMENDED PLAN OF REORGANIZATION**
**Dated this 23rd day of March, 2016**

---

**Filed by:**
**GARY M. WALLACE**
**Debtor and Debtor in Possession**

---

**Attorneys for Debtor and Debtor in Possession,**
**J. Nevin Smith**
**Smith Conerly LLP**
**402 Newnan Street**
**Carrollton, Georgia 30117**
**(770) 834-1160**

COMES NOW, GARY M. WALLACE, debtor and debtor in possession in the above-captioned case (the "Debtor"), and, pursuant to Sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this First Amended Plan of Reorganization (the "Plan") for the resolution of the Claims against and Interests in the Debtor. The Debtor is the proponent of this Plan within the meaning of Section 1129 of the Bankruptcy Code.

## Article 1
## Introduction

1.1 <u>Disclosure Statement.</u> Contemporaneously with the filing of the Plan, the Debtor filed and served a First Amended Disclosure Statement, dated March 23, 2016 (the "Disclosure Statement"), as required by Section 1125 of the Bankruptcy Code. The Disclosure Statement contains the history of the Debtor, financial information regarding the Debtor and its assets, and a solicitation of acceptances of this Plan.

1.2 <u>Property and Claims.</u> This Plan deals with all property of the Debtor and provides for treatment of all Claims against and Interests in the Debtor and its property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1    The following terms, when used in this Plan, shall have the following meaning:

2.1.1 "Administrative Claim" means a Claim for payment of an administrative expense entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2.1.2 "Allowed Claim" shall mean a Claim or any portion thereof that is enforceable against the Debtor or enforceable against the property of the Debtor under Sections 502 *or* 503 of the Bankruptcy Code.

2.1.3 "Allowed Secured Claim" shall mean the amount of the allowed Claim held by parties secured by property of the Debtor which is equal to the amount stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4 "Allowed Unsecured Claim" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2

2.1.5 "Assets" means, collectively, all of the property, as defined by Section 541 of the Bankruptcy Code, of the Estate of the Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6 "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7 "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8 "Bankruptcy Case" means the chapter 11 case initiated by the Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9 "Bankruptcy Code" means title 11 of the United States Code.

2.1.10 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Newnan Division.

2.1.11 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12 "Business Day" means any day on which the commercial banks are required to be open for business in Newnan, Georgia.

2.1.13 "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14 "Causes of Action" means all Avoidance Actions and any and all of the Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "Chapter 11" shall mean chapter 11 of the Bankruptcy Code.

2.1.16 "Claim" means a claim against the Debtor whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

2.1.17 "Claims Objection Deadline" means the later of the first Business Day which is (i) thirty (30) days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

2.1.18 "Classes" means a category of Claims or Interests described in this Plan.

2.1.19 "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.20 "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under Section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.21 "Confirmation Order" means the order confirming this Plan pursuant to Section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

2.1.22 "Debtor" shall mean GARY M. WALLACE, the debtor in this Bankruptcy Case.

2.1.23 "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in the Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.24 "Disclosure Statement" means the First Amended Disclosure Statement for Plan of Reorganization filed by Debtor, dated March 23, 2016, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.25 "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.26 "Distribution" means any distribution by the Debtor to a Holder of an Allowed Claim.

2.1.27 "District Court" means the United States District Court for the Northern District of Georgia, Newnan Division.

2.1.28 "Effective Date" means the date that is sixty (60) days after entry of the Confirmation Order.

2.1.29 "Equipment" shall mean the machinery, fixtures, equipment, and other supplies used by the Debtor in the operation of business.

2.1.30 "Estate" means, with regard to the Debtor, the estate that was created by the commencement by the Debtor of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of Sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.31 "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which the Debtor is a party.

2.1.32 "Filing Date" means February 2, 2015.

2.1.33 "Final Distribution" means the Distribution by the Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.34 "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.35 "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.36 "Holder" means a holder of a Claim or Interest, as applicable.

2.1.37 "Impaired" shall have the meaning ascribed thereto in Section 1124 of the Bankruptcy Code.

2.1.38 "Interests" means the equity interests in the Debtor.

2.1.39 "Lien" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

2.1.40 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code) or other entity.

5

2.1.41 "Plan" means this Plan of Reorganization, as the same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.42 "Priority Claim" means a Claim entitled to priority under the provisions of Section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.43 "Priority Tax Claim" means a Claim against the Debtor that is of a kind specified in Sections 507(a)(8) of the Bankruptcy Code.

2.1.44 "Professional Compensation" means (1) any amounts that the Bankruptcy Court allows pursuant to Section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtor and the unsecured creditors' committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to Sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.45 "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

2.1.46 "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.47 "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.48 "Schedules" means the Schedules of Assets and Liabilities the Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.49 "Secured Claim" means a Claim against the Debtor to the extent secured by a Lien on any property of the Debtor on the Petition Date to the extent of the value of said property as provided in Section 506(a) of the Bankruptcy Code.

2.1.50 "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of Section 510 of the Bankruptcy Code or other applicable law.

2.1.51 "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52 "Unsecured Claim" means any Claim against the Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2 Time. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3 Events of Default. In the event of a default by Debtor in payments under the Plan or otherwise, the Holder of such Claim must send written notice to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless such Holder has received written notice of a change of address for Debtor, as applicable. The Holder of such Claim must send such Notice via certified mail with a courtesy copy via email and regular mail to J. Nevin Smith at the address reflected in the then current directory of the State of Bar of Georgia. Except as specifically provided with respect to each Claimant in Section 4 (which shall control in case of any conflict with this Section 2.3), Debtor shall have twenty (20) days from the Debtor's receipt of the notice of default to cure such default. Receipt by the Debtor's Attorney is for courtesy notice only and shall not be deemed receipt by the Debtor of the required Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims of sub-class of Claims shall not constitute a default under any other Class of Claims of sub-class of Claims.

## Article 3
## Classification of Claims and Interests; Impairment

3.1 Summary. The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

Class 1 shall consist of the Dade County Tax Commissioner Tax Claim.

Class 2 shall consist of the Walker County Tax Commissioner Tax Claim.

Class 3 shall consist of the Coweta County Tax Commissioner Tax Claim.

Class 4 shall consist of the Secured Claim of Seterus, Inc.

7

Class 5 shall consist of the Secured Claim of Branch Banking & Trust Company.

Class 6 shall consist of the Secured Claim No. 1 of Bank of Lafayette.

Class 7 shall consist of the Secured Claim No. 2 of Bank of Lafayette.

Class 8 shall consist of the Secured Claim of CharterBank.

Class 9 shall consist of the Secured Claim of Mountain Valley Community Bank.

Class 10 shall consist of the General Unsecured Claims.

**Article 4**
**Treatment of Claims and Interests**

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims. Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan with the accrued and unpaid interest, if any) without prepayment penalty.

**4.1 Class 1: DADE COUNTY TAX COMMISSIONER**

The amount of any Dade County Tax Claim that is not otherwise assessed or assessable on or prior to the Effective Date, and the right of the Dade County Tax Commissioner, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Dade County Tax Commissioner would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to Section 1141 of the Bankruptcy Code. Debtor reserves the right to pay any tax claim in full at any time.

Class 1 shall consist of the priority or secured tax claim of the Dade County Tax Commissioner. The Dade County Tax Commissioner has filed a proof of claim showing a secured claim in the aggregate amount of $1,213.80. The Dade County Tax Commissioner's Class 1 Tax Claim shall be fixed at $1,213.80, or such lesser amount as allowed by the Court. Debtor shall pay the full amount of the allowed Dade County Tax Commissioner Class 1 Priority Tax Claim in 60 equal monthly payments of $22.35 commencing on the 20th day of the first full calendar month following the Effective Date and continuing on the 20th day of each month thereafter. The Dade County Tax Commissioner's Class 1 Priority Tax Claim shall accrue interest on the outstanding balance of the Class 1 Tax Claim from the Effective Date calculated at the fixed rate of 4% per annum or such lesser rate agreed to by the Dade County Tax Commissioner. In the event the Dade County Tax Commissioner holds a tax lien against any of Debtor's property, such lien shall continue and attach to Debtor's property to the same extent, validity and priority as existed on the Filing Date. Upon the Dade County Tax Commissioner's receipt of its final Class 1 distribution related to a particular parcel, the Dade County Tax Commissioner shall cancel its attendant tax lien, if any. Any third party payments or payments in excess of the scheduled monthly Distribution pursuant to Class 1 received by the Dade County Tax Commissioner shall be applied to the principal tax obligation owed by Debtor

pursuant to Class 1. Debtor shall be authorized to direct payments made under the Plan or otherwise to application towards designated parcels. In the event any third party or Debtor pays an amount in excess of the scheduled monthly Distributions pursuant to Class 1 to Dade County, the monthly payment herein shall be re-amortized over the remaining term and reduced accordingly.

A failure by the Debtor to make a payment to the Dade County Tax Commissioner pursuant to the terms of the Plan shall be an event of default. If the Debtor fails to cure an event of default as to tax payments within twenty (20) days notice of default by the Dade County Tax Commissioner to the Debtor and Debtor᾽s counsel, then the Dade County Tax Commissioner may (a) enforce the entire amount of its allowed secured or priority Class 1 tax claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of the Class 1 Claim is Impaired and entitled to vote to accept or reject the Plan.

## 4.2 Class 2: WALKER COUNTY TAX COMMISSIONER

The amount of any Walker County Tax Claim that is not otherwise assessed or assessable on or prior to the Effective Date, and the right of the Walker County Tax Commissioner, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Walker County Tax Commissioner would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to Section 1141 of the Bankruptcy Code. Debtor reserves the right to pay any tax claim in full at any time.

Class 2 shall consist of the priority or secured tax claim of the Walker County Tax Commissioner. The Walker County Tax Commissioner has filed a proof of claim showing secured claims in the aggregate amount of $5,563.49. The Walker County Tax Commissioner's Class 2 Tax Claim shall be fixed at $5,563.49, or such lesser amount as allowed by the Court. Debtor shall pay the full amount of the allowed Walker County Tax Commissioner Class 2 Priority Tax Claim in 60 equal monthly payments of $102.46 commencing on the 20th day of the first full calendar month following the Effective Date and continuing on the 20th day of each month thereafter. The Walker County Tax Commissioner᾽s Class 2 Priority Tax Claim shall accrue interest on the outstanding balance of the Class 2 Tax Claim from the Effective Date calculated at the fixed rate of 4% per annum or such lesser rate agreed to by the Walker County Tax Commissioner. In the event the Walker County Tax Commissioner holds a tax lien against any of Debtor's property, such lien shall continue and attach to Debtor᾽s property to the same extent, validity and priority as existed on the Filing Date. Upon the Walker County Tax Commissioner's receipt of its final Class 2 distribution related to a particular parcel, the Walker County Tax Commissioner shall cancel its attendant tax lien, if any. Any third party payments or payments in excess of the scheduled monthly Distribution pursuant to Class 2 received by the Walker County Tax Commissioner shall be applied to the principal tax obligation owed by Debtor pursuant to Class 2. Debtor shall be authorized to direct payments made under the Plan or otherwise to application towards designated parcels. In the event any third party or Debtor pays an amount in excess of the scheduled monthly Distributions pursuant to Class 2 to Walker County, the monthly payment herein shall be re-amortized over the remaining term and reduced

accordingly.

A failure by the Debtor to make a payment to the Walker County Tax Commissioner pursuant to the terms of the Plan shall be an event of default. If the Debtor fails to cure an event of default as to tax payments within twenty (20) days notice of default by the Walker County Tax Commissioner to the Debtor and Debtor's counsel, then the Walker County Tax Commissioner may (a) enforce the entire amount of its allowed secured or priority Class 2 tax claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of the Class 2 Claim is impaired and entitled to vote on the Plan.

### 4.3 Class 3: COWETA COUNTY TAX COMMISSIONER

The amount of any Coweta County Tax Claim that is not otherwise assessed or assessable on or prior to the Effective Date, and the right of the Coweta County Tax Commissioner, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Coweta County Tax Commissioner would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to Section 1141 of the Bankruptcy Code. Debtor reserves the right to pay any tax claim in full at any time.

Class 3 shall consist of the priority or secured tax claim of the Coweta County Tax Commissioner. The Coweta County Tax Commissioner has filed a proof of claim showing secured and priority claims in the aggregate amount of $22,426.73. The Coweta County Tax Commissioner's Class 3 Tax Claim shall be fixed at $22,426.73, or such lesser amount as allowed by the Court. Debtor shall pay the full amount of the allowed Coweta County Tax Commissioner Class 3 Priority Tax Claim in 60 equal monthly payments of $413.02 commencing on the 20th day of the first full calendar month following the Effective Date and continuing on the 20th day of each month thereafter. The Coweta County Tax Commissioner's Class 3 Priority Tax Claim shall accrue interest on the outstanding balance of the Class 3 Tax Claim from the Effective Date calculated at the fixed rate of 4% per annum or such lesser rate agreed to by the Coweta County Tax Commissioner. In the event the Coweta County Tax Commissioner holds a tax lien against any of Debtor's property, such lien shall continue and attach to Debtor's property to the same extent, validity and priority as existed on the Filing Date. Upon the Coweta County Tax Commissioner's receipt of its final Class 3 distribution related to a particular parcel, the Coweta County Tax Commissioner shall cancel its attendant tax lien, if any. Any third party payments or payments in excess of the scheduled monthly Distribution pursuant to Class 3 received by the Coweta County Tax Commissioner shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3. Debtor shall be authorized to direct payments made under the Plan or otherwise to application towards designated parcels. In the event any third party or Debtor pays an amount in excess of the scheduled monthly Distributions pursuant to Class 3 to Coweta County, the monthly payment herein shall be re-amortized over the remaining term and reduced accordingly.

A failure by the Debtor to make a payment to the Coweta County Tax Commissioner pursuant to the terms of the Plan shall be an event of default. If the Debtor fails to cure an event of default as to tax payments within twenty (20) days notice of default by the Coweta County

10

Tax Commissioner to the Debtor and Debtor's counsel, then the Coweta County Tax Commissioner may (a) enforce the entire amount of its allowed secured or priority Class 3 tax claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The Holder of the Class 3 Claim is impaired and entitled to vote to accept or reject the Plan.

### 4.4 Class 4: SECURED CLAIM OF SETERUS, INC.

Class 4 consists of the Secured Claim of Seterus, Inc. ("Seterus"). Seterus has filed a proof of claim showing a secured claim in the aggregate amount of $116,111.04 as of November 24, 2015. Seterus's Class 4 Claim shall be fixed at $116,111.04, less payments applied to such amount after the date of the Disclosure Statement (such amount, or such other amount as allowed by the Court, plus interest accruing pursuant to this paragraph shall be referred to herein as the "Secured Class 4 Claim"). The Secured Class 4 Claim is secured by a first priority lien on Debtor's real property located at 505 Stone Creek Road, Rising Fawn, Dade County, Georgia (the "Stone Creek Property") as evidenced by the Security Deed recorded in the Office of the Clerk of the Superior Court of Dade County, Georgia on May 21, 2006 in Deed Book 380 commencing on Page 465 (the "Stone Creek Security Deed"). Debtor values the Stone Creek Property at $116,500. Debtor's valuation of the Stone Creek Property is based upon Debtor's review of recent sales of comparable real properties in the area of the Stone Creek Property in consultation with local real estate agents. Seterus shall retain its first priority lien on the Stone Creek Property to the extent of the Secured Class 4 Claim. Upon receipt of the then outstanding balance of the Class 4 Claim, Seterus shall cancel its first priority lien on the Stone Creek Property and shall take any and all steps reasonable necessary to evidence such cancellation, including, but not limited to, filing a cancelation of the Stone Creek Security Deed and any other security documents. Upon Debtor's request, Seterus shall provide written confirmation of the then outstanding balance of the Class 4 Claim and that Seterus' first priority lien will be released upon payment of such outstanding balance. Debtor shall satisfy the Secured Class 4 Claim as follows: Commencing on the 20th day following the Effective Date and continuing on the 20th day of each month thereafter through the 360th month following the Effective Date, Debtor shall commence principal and interest payments to Seterus based on a thirty (30) year amortization with interest accruing at an annual interest rate of four percent (4.00%) per annum on the Secured Class 4 Claim with a final payment for all outstanding principal and interest on the Class 4 Secured Claim, if any, on the 360th month following the Effective Date ("Class 4 Maturity Date"). Accordingly, Debtor estimates such monthly payments shall be $554.33 on the Secured Class 4 Claim. Debtor may prepay the Class 4 Secured Claim in whole or in part at any time without premium or penalty. In the event Debtor defaults under its obligations under the Class 4 Secured Claim, Seterus shall send written notice to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Seterus has received written notice of a change of address for Debtor. Seterus must send such notice via certified mail with a courtesy copy via email and regular mail to J. Nevin Smith at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have fourteen (14) days from the Debtor's receipt of the notice of default to cure such default. Receipt by the Debtor's Attorney is for courtesy notice only and shall not be deemed receipt by the Debtor of the required Notice. In the event Debtor fails to cure such default, Seterus shall be authorized to call a default on the Class 4 Secured Debt and exercise its state law rights and remedies against the Stone Creek Property.

11

The Claim of the Class 4 Creditor is Impaired by the Plan and the holder of the Class 4 Claim is entitled to vote.

### 4.5 Class 5: SECURED CLAIM OF BRANCH BANK AND TRUST COMPANY

Class 5 consists of the Claim of Branch Bank and Trust Company ("BB&T"). BB&T has filed a proof of claim showing a secured claim in the aggregate amount of $22,896.04 as of February 11, 2015. BB&T's Class 5 Claim shall be fixed at $22,896.04, less payments applied to such amount after the date of BB&T's Proof of Claim (such amount, or such other amount as allowed by the Court, plus interest accruing pursuant to this paragraph shall be referred to herein as the "Secured Class 5 Claim"). The Secured Class 5 Claim is secured by a first priority lien on Debtor's real property located at 317 Sharpsburg McCollum Road, Sharpsburg, Coweta County, Georgia (the "317 Property") as evidenced by the deed to secure debt recorded in the Office of the Clerk of the Superior Court of Coweta County, Georgia on May 24, 1999 in Deed Book 1393 commencing on Page 331 (the "BB&T Security Deed"). Debtor values the 317 Property at $50,000. Debtor's valuation of the 317 Property is based upon Debtor's review of recent sales of comparable real properties in the area of the 317 Property in consultation with local real estate agents. BB&T shall retain its first priority lien on the 317 Property to the extent of the Secured Class 5 Claim. Upon receipt of the then outstanding balance of the Class 5 Claim, BB&T shall cancel its first priority lien on the 317 Property and shall take any and all steps reasonable necessary to evidence such cancellation, including, but not limited to, filing a cancelation of the BB&T Security Deed and any other security documents. Upon Debtor's request, BB&T shall provide written confirmation of the then outstanding balance of the Class 5 Claim and that BB&T's first priority lien will be released upon payment of such outstanding balance. Debtor shall satisfy the Secured Class 5 Claim as follows: Commencing on the 20th day following the Effective Date and continuing on the 20th day of each month thereafter through the 60th month following the Effective Date, Debtor shall commence principal and interest payments to BB&T based on a five (5) year amortization with interest accruing at an annual interest rate of six percent  (6.00%) per annum on the Secured Class 5 Claim with a final payment for all outstanding principal and interest on the Class 5 Secured Claim, if any, on the 60th month following the Effective Date ("Class 5 Maturity Date"). Accordingly, Debtor estimates such monthly payments shall be $442.64 on the Secured Class 5 Claim. Debtor may prepay the Class 5 Secured Claim in whole or in part at any time without premium or penalty. In the event Debtor defaults under its obligations under the Class 5 Secured Claim, BB&T shall send written notice to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless BB&T has received written notice of a change of address for Debtor. BB&T must send such notice via certified mail with a courtesy copy via email and regular mail to J. Nevin Smith at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have fourteen (14) days from the Debtor's receipt of the notice of default to cure such default. Receipt by the Debtor's Attorney is for courtesy notice only and shall not be deemed receipt by the Debtor of the required Notice. In the event Debtor fails to cure such default, BB&T shall be authorized to call a default on the Class 5 Secured Debt and exercise its state law rights and remedies against the 317 Property.

Any uncured default under Class 3 of the Plan (the Coweta County Tax Commissioner's Class 3 Claim) shall constitute a default under the Class 5 Secured Claim. All non-monetary obligations of the applicable pre-petition loan documents and security documents (Pre-Petition Loan Documents), including but not limited to, the BB&T promissory note and the BB&T

Security Deed (as amended, assigned or modified) shall remain in full force and effect (including but not limited to any requirements to maintain insurance) unless specifically modified pursuant to the provisions of treatment under this Class 5.

The Claim of the Class 5 Creditor is Impaired by the Plan and the holder of the Class 5 Claim is entitled to vote.

### 4.6  Class 6: SECURED CLAIM NO. 1  OF BANK OF LAFAYETTE

Class 6 consists of the Claim of Bank of Lafayette ("BOL"). BOL has filed a proof of claim showing a secured claim in the aggregate amount of $128,251.79 as of October 27, 2015. BOL's Class 6 Claim shall be fixed at $128,251.79, less payments applied to such amount after the date of BOL's Proof of Claim (such amount, or such other amount as allowed by the Court, plus interest accruing pursuant to this paragraph shall be referred to herein as the "Secured Class 6 Claim"). The Secured Class 6 Claim is secured by a first priority lien on Debtor's real property consisting of approximately 28.85 acres located on Ascalon Road, in Walker County and Dade County, Georgia (the "Ascalon Property") as evidenced by the Deed to Secure Debt (With Future Advances Clause) recorded in the Office of the Clerk of the Superior Court of Dade County, Georgia on December 28, 2011 in Deed Book 443 commencing on Page 549 and recorded in the Office of the Clerk of the Superior Court of Walker County, Georgia on December 15, 2011 in Deed Book 1703 commencing on Page 61 (the "Ascalon Security Deed"). Debtor values the Ascalon Property at $130,000. Debtor's valuation of the Ascalon Property is based upon Debtor's review of recent sales of comparable real properties in the area of the Ascalon Property in consultation with local real estate agents. BOL shall retain its first priority lien on the Ascalon Property to the extent of the Secured Class 6 Claim. Upon receipt of the then outstanding balance of the Class 6 Claim, BOL shall cancel its first priority lien on the Ascalon Property and shall take any and all steps reasonable necessary to evidence such cancellation, including, but not limited to, filing a cancelation of the Ascalon Security Deed and any other security documents. Upon Debtor's request, BOL shall provide written confirmation of the then outstanding balance of the Class 6 Claim and that BOL' first priority lien will be released upon payment of such outstanding balance. Debtor shall satisfy the Secured Class 6 Claim as follows: Commencing on the 20th day following the Effective Date and continuing on the 20th day of each month thereafter through the 240th month following the Effective Date, Debtor shall commence principal and interest payments to BOL based on a twenty (20) year amortization with interest accruing at an annual interest rate of five percent  (5.00%) per annum on the Secured Class 6 Claim with a final payment for all outstanding principal and interest on the Class 6 Secured Claim, if any, on the 240th month following the Effective Date ("Class 6 Maturity Date"). Accordingly, Debtor estimates such monthly payments shall be $846.41 on the Secured Class 6 Claim. Debtor may prepay the Class 6 Secured Claim in whole or in part at any time without premium or penalty. In the event Debtor defaults under its obligations under the Class 6 Secured Claim, BOL shall send written notice to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless BOL has received written notice of a change of address for Debtor. BOL must send such notice via certified mail with a courtesy copy via email and regular mail to J. Nevin Smith at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have fourteen (14) days from the Debtor's receipt of the notice of default to cure such default. Receipt by the Debtor's Attorney is for courtesy notice only and shall not be deemed receipt by the Debtor of the required Notice. In the event Debtor fails to cure such default, BOL shall be authorized to call a default on the Class 6 Secured Debt and exercise its state law rights and remedies against the Ascalon Property.

The Claim of the Class 6 Creditor is Impaired by the Plan and the holder of the Class 6 Claim is entitled to vote.

### 4.7  Class 7: SECURED CLAIM NO. 2  OF BANK OF LAFAYETTE

Class 7 consists of the Claim of Bank of Lafayette ("BOL"). BOL has filed a proof of claim showing a secured claim in the aggregate amount of $78,784.17 as of October 27, 2015. BOL's Class 7 Claim shall be fixed at $78,784.17, less payments applied to such amount after the date of BOL's Proof of Claim (such amount, or such other amount as allowed by the Court, plus interest accruing pursuant to this paragraph shall be referred to herein as the "Secured Class 7 Claim"). The Secured Class 7 Claim is secured by a first priority lien on Debtor's real property consisting of approximately 8.5 acres located on Payne Chapel Road, in Walker County, Georgia (the "Payne Chapel Property") as evidenced by the Deed to Secure Debt (With Future Advances Clause) recorded in the Office of the Clerk of the Superior Court of Walker County, Georgia on November 11, 2011 in Deed Book 1698 commencing on Page 755 (the "Payne Chapel Security Deed"). Debtor values the Payne Chapel Property at $80,000. Debtor's valuation of the Payne Chapel Property is based upon Debtor's review of recent sales of comparable real properties in the area of the Payne Chapel Property in consultation with local real estate agents. BOL shall retain its first priority lien on the Payne Chapel Property to the extent of the Secured Class 7 Claim. Upon receipt of the then outstanding balance of the Class 7 Claim, BOL shall cancel its first priority lien on the Payne Chapel Property and shall take any and all steps reasonable necessary to evidence such cancellation, including, but not limited to, filing a cancelation of the Payne Chapel Security Deed and any other security documents. Upon Debtor's request, BOL shall provide written confirmation of the then outstanding balance of the Class 7 Claim and that BOL' first priority lien will be released upon payment of such outstanding balance. Debtor shall satisfy the Secured Class 7 Claim as follows: Commencing on the 20th day following the Effective Date and continuing on the 20th day of each month thereafter through the 240th month following the Effective Date, Debtor shall commence principal and interest payments to BOL based on a twenty (20) year amortization with interest accruing at an annual interest rate of five percent  (5.00%) per annum on the Secured Class 7 Claim with a final payment for all outstanding principal and interest on the Class 7 Secured Claim, if any, on the 240th month following the Effective Date ("Class 7 Maturity Date"). Accordingly, Debtor estimates such monthly payments shall be $519.94 on the Secured Class 7 Claim. Debtor may prepay the Class 7 Secured Claim in whole or in part at any time without premium or penalty. In the event Debtor defaults under its obligations under the Class 7 Secured Claim, BOL shall send written notice to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless BOL has received written notice of a change of address for Debtor. BOL must send such notice via certified mail with a courtesy copy via email and regular mail to J. Nevin Smith at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have fourteen (14) days from the Debtor's receipt of the notice of default to cure such default. Receipt by the Debtor's Attorney is for courtesy notice only and shall not be deemed receipt by the Debtor of the required Notice. In the event Debtor fails to cure such default, BOL shall be authorized to call a default on the Class 7 Secured Debt and exercise its state law rights and remedies against the Payne Chapel Property.

The Claim of the Class 7 Creditor is Impaired by the Plan and the holder of the Class 7 Claim is entitled to vote.

### 4.8  Class 8: SECURED CLAIM OF CHARTERBANK

Class 8 consists of the Secured Claim of CharterBank ("Charter"). Charter has filed a proof of claim in the aggregate amount of $2,387,588.76 as of October 21, 2015, which claim is embodied in a final judgement evidenced by a *Writ of Fieri Facias* issued by the Superior Court of Coweta County, Georgia and recorded in, among other places, the Office of the Clerk of the Superior Court of Dade County, Georgia at General Execution Docket Book 34, Page 130 (the "Dade County FiFa"), and the Office of the Clerk of the Superior Court of Coweta County, Georgia at General Execution Docket Book 157, Page 120 (the "Coweta County FiFa"). Pursuant to agreement between the Debtor and Charter, Charter's Class 8 Secured Claim shall be fixed at $70,000.00 (the "Secured Class 8 Claim"), which is equal to the fair market value of the Debtor's property in Dade County, Georgia in which Charter holds a valid and perfected first lien by virtue of the Dade County FiFa (the "Charter Collateral"). The Charter Collateral consists of 34.09 acres of undeveloped agriculturally zoned real property on Georgia Highway 189, Dade County, Georgia. Debtor and Charter have further agreed that the Coweta County FiFa does not attach to any equity of the Debtor in any other property of the estate.

Debtor values the Charter Collateral at $82,100.00. Debtor's valuation of the Charter Collateral is based upon the tax valuation of the Charter Collateral as well as Debtor's review of recent sales of comparable real properties in the area of the Charter Collateral in consultation with local real estate agents. Charter shall retain its first priority lien on the Charter Collateral to the extent of the Secured Class 8 Claim. Upon receipt of the then outstanding balance of the Class 8 Claim, Charter shall cancel its first priority lien on Charter Collateral and shall take any and all steps reasonable necessary to evidence such cancellation, including, but not limited to, filing a cancelation of all security deeds and any other security documents. Upon Debtor's request, Charter shall provide written confirmation of the then outstanding balance of the Secured Class 8 Claim and that Charter's first priority lien will be released upon payment of such outstanding balance. Debtor shall continue to make adequate protection payments to Charter in the amount of $1,000.00 per month prior to and after the Effective Date of the Plan and shall satisfy the Secured Class 8 Claim on or before July 31, 2016 (the "Class 9 Maturity Date"). The Debtor expects to satisfy the Secured Class 8 Claim from the net proceeds of the sale of certain real property owned by Regional Atlanta Development, Inc. ("RAD"), a corporation wholly owned by Debtor, consisting of 29.74 acres of undeveloped agriculturally zoned land on Georgia Highway 16, Senoia, Georgia (the "RAD Property")[1] or from the net proceeds of Debtor's construction business operations. The balance of Charter's Claims shall constitute a Class 10 General Unsecured Claim.

---

[1] The RAD Property is currently subject to a Land Purchase and Sale Agreement, dated January 26, 2016 (the "RAD PSA"), between RAD and a purchaser not affiliated with the Debtor for a gross purchase price of approximately $390,000.00. The Debtor expects the closing of the RAD PSA to close on or before July 31, 2016. The RAD Property is subject to a Judgement Lien in favor of United Bank in the approximate amount of $200,000 as of the date of this Plan which is embodied in a final judgement evidenced by a *Writ of Fieri Facias* issued by the Superior Court of Coweta County, Georgia and recorded in the Office of the Clerk of the Superior Court of Coweta County, Georgia at General Execution Docket Book 162, Page 221. Upon closing of the sale of the sale of the RAD Property, the net proceeds of the transaction should be approximately $120,000.00 after payment of the real estate sales commission in the amount of approximately $39,000, satisfaction of the United Bank Lien in the amount of approximately $200,000 and the redemption of the tax sale of the RAD Property in the amount of approximately $30,000.00. Such net proceeds will be distributed to the Debtor and used by the Debtor to satisfy the Class 9 Secured Claim and to pay administrative expenses of this Case.

The Claim of the Class 8 Secured Claim is Impaired by the Plan and the holder of the Class 8 Secured Claim is entitled to vote.

**4.9 Class 9: SECURED CLAIM OF MOUNTAIN VALLEY COMMUNITY BANK**

Class 9 consists of the Secured Claim of Mountain Valley Community Bank ("MVCB"). MVCB has filed a proof of claim in the aggregate amount of $453,595.70 as of November 6, 2015, which claim is embodied in a final judgement evidenced by a *Writ of Fieri Facias* issued by the Superior Court of Coweta County, Georgia and recorded in, among other places, the Office of the Clerk of the Superior Court of Coweta County, Georgia at General Execution Docket Book 115, Page 109.  MVCB's Class 9 Secured Claim shall be fixed at $190,500.00 (the "Secured Class 9 Claim"), which is equal to the fair market value of the Debtor's property in Coweta County, Georgia in which MVCB holds a valid and perfected first lien by virtue of MVCB's FiFa (the "MVCB Collateral"). The MVCB Collateral consists of the following real properties:

| Description of Property Subject to MVCB *Writ of Fieri Facias* | Net Value (Net of Secured Debt) |
|---|---|
| 317 Sharpsburg  McCollum Road, Coweta County, Georgia – approximately 1,482 square foot single family residence (3BR/1BA) on 1.0 Acres  (Tax Parcel No. 136-1088-007) | $27,000.00 |
| 2.37 acres of unimproved residential land located on Vaughn Road, Coweta County, Georgia -  wooded residential building lot  (Tax Parcel No. 121-6058-004A) | $20,000.00 |
| 5.53 acres of unimproved land located on Sharpsburg McCollum Road, Coweta County, Georgia -  unimproved cleared building lot (Tax Parcel No. 136-1088-008) | $40,000.00 |
| 1.71 acres of unimproved land located on Highway 154, Coweta County, Georgia -  unimproved cleared building lot (Tax Parcel No. 136-1088-120) | $8,000.00 |
| 1.47 acres of unimproved land located on East Highway 16, Coweta County, Georgia -  unimproved wooded building lot (Tax Parcel No. 124-1049-011) | $25,000.00 |
| Lot 69, Beaver Creek Subdivision, Coweta County, Georgia – unbuildable 0.80 acre residential building lot (Tax Parcel No. 123-6065-093) | $500.00 |
| 411 Sharpsburg  McCollum Road, Coweta County, Georgia – approximately 1,062 square foot single family residence (2BR/1BA) on 4.92 Acres  (Tax Parcel No. 135-1087-007) | $70,000.00 |
| Total Equity Value | $190,500.00 |

MCCB's FiFa does not attach to any equity of the Debtor in any other property of the estate. Debtor values the MVCB Collateral at $190,500.00. Debtor's valuation of the MVCB Collateral is based upon the tax valuation of the MVCB Collateral as well as Debtor's review of recent sales of comparable real properties in the area of the MVCB Collateral in consultation with local real estate agents. MVCB shall retain its first priority lien on the MVCB Collateral to the extent of the Secured Class 9 Claim. Debtor shall satisfy the Secured Class 9 Claim as follows: Commencing on the 20th day following the Effective Date and continuing on the 20th day of each month thereafter through the 240th month following the Effective Date, Debtor shall

commence principal and interest payments to MVCB based on a twenty (20) year amortization with interest accruing at an annual interest rate of five percent (5.00%) per annum on the Secured Class 9 Claim with a final payment for all outstanding principal and interest on the Class 9 Secured Claim, if any, on the 240th month following the Effective Date ("Class 9 Maturity Date"). Accordingly, Debtor estimates such monthly payments shall be $1,257.22 on the Secured Class 9 Claim. Debtor may prepay the Class 9 Secured Claim in whole or in part at any time without premium or penalty. In the event Debtor defaults under its obligations under the Class 9 Secured Claim, MVCB shall send written notice to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless MVCB has received written notice of a change of address for Debtor. MVCB must send such notice via certified mail with a courtesy copy via email and regular mail to J. Nevin Smith at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have fourteen (14) days from the Debtor's receipt of the notice of default to cure such default. Receipt by the Debtor's Attorney is for courtesy notice only and shall not be deemed receipt by the Debtor of the required Notice. In the event Debtor fails to cure such default, MVCB shall be authorized to call a default on the Class 9 Secured Debt and exercise its state law rights and remedies against the MVCB Collateral. Upon receipt of the then outstanding balance of the Class 9 Claim, MVCB shall cancel its lien on the MVCB Collateral and shall take any and all steps reasonable necessary to evidence such cancellation, including, but not limited to, filing a cancelation of its FiFa. Upon Debtor's request, MVCB shall provide written confirmation of the then outstanding balance of the Secured Class 9 Claim. The balance of MVCB's Claim shall be treated as a Class 10 general unsecured claim.

The Claim of the Class 9 Creditor is Impaired by the Plan and the holder of the Class 9 Claim is entitled to vote.

**4.10 <u>Class 10</u> <u>UNSECURED CLAIMS</u>** Class 10 Claims shall consist of all amounts due and owing by Debtor on unsecured debts including contracts, notes or accounts and any deficiency amounts on secured claims. Debtor shall pay Holders of Allowed Unsecured Claims an aggregate distribution of 2.5% of their allowed Class 10 Claims. Holders of Class 10 Claims shall receive five (5) equal annual payments equivalent to .5% of their total Class 10 distribution for a period of five years with the first payment December 31, 2017 and subsequent payments continuing on each subsequent December 31 for a total of five payments.

Nothing herein, including the list of estimated Distributions, shall constitute an admission as to the nature, validity, or amount of Claim or waive any requirement for such holder to take further action to assert such Claim including any necessity to obtain a deficiency judgment against Debtor or any third party under state law. Debtor reserves the right to object to any and all claims. Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan) without prepayment penalty.

The Claims of the Class 10 Creditors are Impaired by the Plan and holders of Class 10 Claims are entitled to vote.

**If any Holder of a Claim or interest disputes the valuation of collateral as stated by Debtor herein and in the Plan and the parties cannot resolve the same, then the Holder of the applicable Claim secured by the applicable collateral must file a motion (the "Valuation Motion") requesting a hearing (the "Valuation Hearing") to determine the value of the applicable collateral. The Valuation Hearing shall be scheduled prior to or at the same time as any hearing on confirmation of the Plan. The deadline to file a motion requesting a Valuation Hearing shall be the same as any deadline to file an objection to confirmation of the Plan. If no Valuation Motion is filed, the valuation of collateral as stated herein and in the Plan shall control.**

### Article 5
### Treatment of Unclassified Claims

5.1 Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on or receiving distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan. All such claims are instead treated separately in accordance with Article 5 of the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

5.2     Administrative Expense Claims.

5.2.1 Subject to the provisions of Sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

5.2.2 Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

Debtor's attorney fees during the remaining pendency of the case shall be paid as the same may be approved by the Bankruptcy Court. The Plan provides that Debtor may pay professional fees incurred after confirmation of the Plan without Court approval. Debtor shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

**Article 6**
**Means for the Implementation of the Plan**

6.1 <u>Parties Responsible for Implementation of the Plan</u> Upon confirmation, the Debtor will be charged with administration of the Case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.

6.2 <u>Sources of Cash for Distribution.</u> Debtor shall pay all claims from Debtor's post petition income from the operation of Debtor's business.

Debtor shall act as the Disbursing Agent to make payments under the Plan unless Debtor appoints some other person or entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

6.3 <u>Preservation of Causes of Action.</u> In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, the Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of the Debtor (or any successors holding such rights of action). The failure of the Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor or the Debtor of such claim, right of action, suit, proceeding or other Retained Action, and the Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserve all causes of actions against current and former customer or tenant for breach of any former or now existing agreement or otherwise. Debtor specifically reserves the right to pursue any claims or counter claims related to Ordinary Course Leases.

6.4 <u>Effectuating Documents, Further Transactions.</u> The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.7 <u>Further Authorization.</u> The Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.8 <u>Liabilities of the Debtor.</u> The Debtor will not have any liabilities except those expressly assumed under the Plan. The Debtor will be responsible for all Operational Expenses (defined as the normal and ordinary costs and expenses of operating the Debtor's business, including, without limitation, payroll and related taxes, insurance premiums, bank charges, maintenance costs, inventory costs, and all other costs of operations of any type arising after the Petition Date in connection with the operation of the Debtor's business, unless specifically excluded under the Plan) incurred by the Debtor in the ordinary course of business after the Filing Date, and those Operational Expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the Operational Expense claim.

### Article 7
### <u>Distributions</u>

7.1 <u>Disbursing Agent.</u> Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Debtor or its agent.

7.2 <u>Distributions of Cash.</u> Any Distribution of Cash made by the Debtor pursuant to this Plan shall, at the Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.3 <u>No Interest on Claims or Interests.</u> Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between the Debtor and a Holder, post-petition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

7.4 <u>Delivery of Distributions.</u> The Distribution to a Holder of an Allowed Claim shall be made by the Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made in Chas shall be retained by the Debtor until such Distributions are claimed. All Cash Distributions returned to the Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Debtor notwithstanding any federal or state escheat laws to the contrary.

7.5 <u>Distributions to Holders as of the Record Date.</u> All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6 <u>Fractional Dollars.</u> Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7 <u>Withholding Taxes.</u> The Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 8
## Procedures for Treating and Resolving Disputed Claims

8.1 <u>Objections to Claims.</u> Debtor shall be entitled to object to Claims, <u>provided, however,</u> that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of the Plan. Any objections to Claims must be filed by the Claims Objection Deadline. The Plan defines the Claims Objection Deadline to be the later of the first Business Day which is (i) thirty (30) days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

8.2 <u>No Distributions Pending Allowance.</u> Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3. <u>Resolution of Claims Objections.</u> On and after the Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

**Article 9**
**Provision for Assumption of Unexpired**
**Leases and Executory Contracts**

9.1 **Provisions Regarding Executory Contracts**

Debtor enters into various leases as landlord in the ordinary course of business ("Ordinary Course Leases"). On the Effective Date, unless otherwise contained in a motion to assume or reject a particular Ordinary Course Lease, Debtor shall assume the Ordinary Course Leases. Any other unexpired leases or executory contracts which are not assumed pursuant to this Plan or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after entry of the Confirmation Order. Any claims which are not timely filed will be disallowed and discharged.

Debtor expressly reserves the right to exercise any and all remedies available to Debtor under the Ordinary Course Leases, at law or in equity, at such time or times as Debtor from time to time may elect. Any failure by Debtor to assert or set forth the occurrence of any default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such default or event of default. Debtor hereby expressly reserves the right to declare any such default or event of default and to take such other action as Debtor may be entitled to under the applicable Ordinary Court Lease or applicable law. No delay on the part of Debtor in exercising any right or remedy under the lease shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

**Article 10**
**Effect of Confirmation**

10.1 Vesting of Debtor's Assets. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors, except as specifically provided in the Plan. As of the Effective Date, Debtor may operate its businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

Debtor specifically reserves the right to pursue any claims or counter claims related to Ordinary Course Leases.

10.2. Discharge of the Debtor. Pursuant to Section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor, the Reorganized Debtor or its Estate that arose prior to the Effective Date.

10.3 <u>Setoffs.</u> Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder of a Claim.

10.4 <u>Exculpation and Limitation of Liability.</u> Under the Plan, Debtor, and Debtor's current and/or post-Filing Date and pre-Effective Date advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan.

10.5 <u>Injunction.</u> The satisfaction, release, and discharge pursuant to Article X of the Plan shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by Sections 524 and 1141 thereof.

10.6 <u>Effect of Confirmation.</u>

10.6.1 <u>Binding Effect.</u> On the Confirmation Date, the provisions of this Plan shall be binding on the Debtor, the Estate, all Holders of Claims against or Interests in the Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

10.6.2 <u>Effect of Confirmation on Automatic Stay.</u> Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

10.6.3 <u>Filing of Reports.</u> The Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.6.4 <u>Post-Effective Date Retention of Professionals.</u> Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will employ and pay professionals in their ordinary course of business.

## Article 11
## Conditions Precedent

11.1    <u>Conditions to Confirmation.</u>    The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.1.1 The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to the Debtor, in its sole and absolute discretion; and

11.1.2 The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Cases.

11.2 <u>Conditions to the Effective Date.</u> The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.2.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan (including documents relating to the Exit Financing) shall be in form and substance that is acceptable to the Debtor in its reasonable discretion;

11.2.3 The Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3 <u>Waiver of Conditions to Confirmation or Consummation.</u> The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by the Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor in its sole discretion (with the consent of the Committee, which consent shall not be unreasonably withheld) regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## Article 12
### Retention and Scope of Jurisdiction of the Bankruptcy Court

12.1    <u>Retention of Jurisdiction.</u> Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purpose:

12.1.1  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3 To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtor;

12.1.4 To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

12.1.5 To hear and rule upon all applications for Professional Compensation;

12.1.6 To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7 To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8 To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9 To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10 To determine any suit or proceeding brought by the Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.11 To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under this Plan;

12.1.12 To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13 To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14 To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any of its assets during the Bankruptcy Case; and

12.1.15 To enter a final decree.

12.2 <u>Alternative Jurisdiction.</u> In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

12.3 <u>Final Decree.</u> The Bankruptcy Court may, upon application of the Reorganized Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to Section 350 of the Bankruptcy Code, provided, however, that: (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtor has brought or bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

**Article 13**
**Miscellaneous Provisions**

13.1 <u>Modification of the Plan.</u> Debtor shall be allowed to modify this Plan pursuant to Section 1127 of the Bankruptcy Code to the extent applicable law permits. Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, Debtor may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. Debtor reserves the right in accordance with Section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2 <u>Allocation of Plan Distributions Between Principal and Interest.</u> To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3 <u>Applicable Law.</u> Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4 <u>Preparation of Estate Returns and Resolution of Tax Claims.</u> The Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under Section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5 <u>Headings.</u> The headings of the Articles and the Sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6 <u>Revocation of Plan.</u> The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7 <u>No Admissions; Objection to Claims.</u> Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtor s rights to object to or reexamine such Claim in whole or in part.

13.8 <u>No Bar to Suits.</u> Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by the Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

13.9 <u>Exhibits/Schedules.</u> All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

13.10 <u>Conflicts.</u> In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## Article 14
### Tax Consequences

Tax consequences resulting from confirmation of this Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.

**The proponent assumes no responsibility for the tax effect that consummation of this Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.**

Respectfully submitted, this 23rd day of March, 2016.

*/s/ Gary M. Wallace*
Gary M. Wallace

Debtor and Debtor in Possession

**SMITH CONERLY LLP**
*/s/ J. Nevin Smith*
J. Nevin Smith
Georgia Bar No. 661110
402 Newnan Street
Carrollton, Georgia 30117
(770) 834-1160
Attorneys for Debtor and Debtor in Possession

28